IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JORGE E. RODRIGUEZ**
  Plaintiff,

            v.                                    **CIVIL NO. 03-1097 (SEC)**

**STATE INSURANCE FUND**
**CORPORATION; et al.**
  Defendants.

**REPORT AND RECOMMENDATION**

This is an action for declaratory and injunctive relief and for compensatory and punitive damages brought by the plaintiff, Dr. Jorge E. Rodriguez ("Rodriguez") against his former employer, State Insurance Fund Corporation ("SIF"), Nicolas Lopez Peña ( "Lopez") both in his personal and official capacity as Administrator of the State Insurance Fund Corporation, and Dr. Maria Isabel Lastra ( "Lastra") both in her personal and official capacity as Director of the Medical Area of the State Insurance Corporation, pursuant to 42 U.S.C., § 1983 and the First, Fifth and/or Fourteenth Amendments to the United States Constitution, Article II, §§ 1, 4, 6-8 of the Puerto Rico Constitution; the laws of the Commonwealth of Puerto Rico, Law 100, 29 L.P.R.A. § 146 et seq., Law 80, 29 L.P.R.A. § 185a et seq., Article 1077 of the Puerto Rico Civil Code, 31 L.P.R.A. 3052, Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. 5141, 5142 and the local statute prohibiting libel and slander, 32 L.P.R.A. § 3141 et seq.. Rodriguez alleges that the SIF did not renew his service contract due to political reasons.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, defendants now move for summary judgment of plaintiff's Section 1983 claim, as well as his supplemental state law claims. (See Docket Nos. 32, 33 and 34). The issues presented are whether Rodriguez has established a genuine issue of material fact with respect to the defendants' reasons not to renew his service contract and dismiss him immediately, to his allegations of violation of due process, hostile environment and defendants' qualified immunity.

**CIVIL NO. 03-1097 (SEC)**                              2

**I. Factual Background**

On October 14, 1991, Rodriguez signed a one year contract to provide orthopaedic services to the SIF's patients at the Industrial Hospital. Similar contracts were executed by the parties until 1999, when the term for the contract was increased for two years. The last contract executed by the parties covered the period of 1999-2001. For ten and a half years Rodriguez rendered his services as physician and surgeon to the injured laborers covered by the SIF's policy in the Industrial Hospital, and out-patient clinics in the San Juan area. See Uncontested Facts, ¶ 4, 12 and 14 (Docket 28).

On November 7, 2000, general elections were held in Puerto Rico. The incumbent New Progressive Party ("NPP") was defeated by the Popular Democratic Party ("PDP"). As part of newly elected Governor Sila Maria Calderon's administration plan, she named co-defendant Lopez as administrator of the SIF. Lopez assumed office on February 2001. Subsequently, he appointed Lastra as his special assistant and then named her SIF Medical Director. Thereafter, on January 31, 2002 co-defendant Lastra sent Rodriguez a letter terminating his employment effective that same day. See Uncontested Facts, ¶ 5, 6, 7, 8 and 9 (Docket 28).

**II. Summary Judgment Standard**

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. 56(e). When deciding a motion for summary judgment, the Court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. See id. "If, after canvassing the material presented, the district court finds some genuine factual issue remains in the case, whose resolution one way or the other could affect its outcome, the court must deny the motion." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

**CIVIL NO. 03-1097 (SEC)**                            3

(1986) (emphasis added). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." Lipsett v. Univ. of P.R., 864 F. 2d 881, 895 (1st Cir. 1988). In a discriminatory employment action case, a plaintiff, "will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's animus." Stepanischen v. Merchs. Despatch Transp. Corp., 722 F .2d 922, 928 (1st Cir. 1983). "Rather, a plaintiff must try to convince the fact-finder to draw an inference from a broad array of circumstantial and often conflicting evidence...." Id. Even in these cases, however, the Court will not refuse to grant summary judgment in favor of the defendant if the plaintiff's claim rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Suarez v. Pueblo Intl. Inc., 229 F. 3d 49, 53 (1st Cir. 2000) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co.), 896 F.2d 5, 8 (1st Cir. 1990).

**III. Legal Analysis**

A. First Amendment Claims

In Mt. Healthy School District v. Doyle, 429 U.S. 274, 287 (1977), the Supreme Court established a two-part burden-shifting analysis for evaluating political discrimination claims of public employees. In order to assert a colorable claim of political discrimination, the plaintiff bears the initial burden of showing that his or her political affiliation was a 'substantial or motivating' factor behind the challenged employment decision. Id. If the plaintiff does so, the burden shifts to the defendant to show, by a preponderance of evidence, that the same employment decision would have been made even in the absence of the plaintiff's protected conduct. Id. Once the defendant proffers a nondiscriminatory reason for the adverse employment action, the plaintiff then has a chance to reject said reason by "adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia v. Rodriguez, 212 F. 3d 69, 78 (1st Cir. 2000). Unlike the burden shifting paradigm under Title VII, the defendant in a political discrimination case bears the burden of persuading the factfinder that his/her reason for the adverse employment action is credible.

**CIVIL NO. 03-1097 (SEC)**                              4

Padilla-Garcia, 212 F.3d at 78."Accordingly, once the burden of persuasion shifts to the defendant-employer, the plaintiff-employee will prevail unless the factfinder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have ocurred in any event for nondiscriminatory reasons." Acevedo-Diaz, 1 F.3d at 67.

      1. Prima Facie Case

According to Rodriguez, on April 17, 2001, the Director of the Office of Contracting, Alberto Rivera, requested from him a series of documents required to sign a new contract for the coming two-year period (2001-2003). **Plaintiff's Exhibit IX**, p.10, ¶ 23 (Docket 51). Rodriguez subsequently filed with the SIF all the documentation requested for such contract. **Plaintiff's Exhibit I**, p. 96 (Docket 51). Thereafter, the Office of Contracting provided Rodriguez with a contract, which he proceeded to sign and submit. **Plaintiff's Exhibit I**, p. 36 (Docket 51). As time went by and the SIF did not sign the contract, Rodriguez alleges he went on several occasions to the Office of Contracting to inquire about the same. **Plaintiff's Exhibit VIII**, p. 31-32 and 34-35 (Docket 51). At one point, Rodriguez claims that Associate Director Edna Saez told him that Lastra had taken the contract into her office. **Plaintiff's Exhibit I**, p. 170 and **Plaintiff's Exhibit XI**, p. 43-45 (Docket 51). Thereafter, Rodriguez alleges he attempted to meet with Lastra, but she would not receive him. **Plaintiff's Exhibit I**, p. 173-174 (Docket 51). Rodriguez further alleges that Lastra knew of his affiliation to the NPP. **Plaintiff's Exhibit I**, p. 56 (Docket 51). Rodriguez also states that the fact the Office of Contracting requested and accepted his signature on the contract meant that he had submitted all the documentation necessary for the renewal of said contract. **Plaintiff's Exhibit VIII**, p. 67 (Docket 51). In addition, Rodriguez claims that almost immediately upon assuming office, Lastra engaged in a pattern of persecution and harassment against him and other NPP affiliates, creating a hostile work environment. **Plaintiff's Exhibit I**, p. 44-45 (Docket 51). Lastly, Rodriguez alleges that Lastra commented in the presence of other SIF employees, including the Director of the Contracting Office, that she was not going to renew Rodriguez's contract. **Plaintiff's Exhibit VIII**, p. 45-47 (Docket 51).

**CIVIL NO. 03-1097 (SEC)**                5

As noted above, Rodriguez has clearly suffered an adverse employment action in as much as he was discharged after signing a contract for the 2001-03 period, submitting the required documentation. The Court also notes that Rodriguez has presented evidence that Lastra knew of his political affiliation, and that the alleged conduct ocurred shortly after her appointment. In light of the aforementioned, the Court concludes that Rodriguez has met his prima facie burden at this, the summary judgment stage.

2. SIF's Mt. Healthy Defense

Defendants allege that they had no knowledge of plaintiff's affiliation to the NPP party. **Defendant's Exhibit XVIII**, p.15 (Docket 33). Moreover, defendants contend that efforts were made to renew Rodriguez's contract, but that he did not fully comply with the requirements imposed by laws and regulations of the Corporation and the Office of the Comptroller of Puerto Rico for the execution of contracts. **Defendant's Exhibits VII, VIII, IX, X, XI, and XVIII** (Docket 33). Defendants state that plaintiff owed a sum of child support to ASUME, and that the regulations of the Office of the Comptroller of Puerto Rico require for the execution of contracts that the independent contractor should not have any such debt. **Defendant's Exhibits XII and XIII** (Docket 33). Defendants also allege that Rodriguez had too many malpractice lawsuits in medical procedures conducted for the SIF and in which the SIF had been included as defendant, and that the SIF determined not to renew contracts with doctors who had many suits for medical malpractice in which the SIF was included. **Defendant's Exhibits V and XVII** (Docket 33).

According to Rodriguez, on January 25, 2002, defendant Lastra sent a letter to the Associate Director of the Contracting Office, Edna Saez, recommending the non-renewal of the Rodriguez contract because he allegedly owed $ 60,000 in child support to ASUME. **Plaintiff's Exhibit XV** (Docket 51). Notwithstanding, Rodriguez has presented evidence that on January 31, 2002, Saez wrote back to Lastra and told her that the ASUME debt was not, in and of itself, cause for not renewing Rodriguez's contract, because the ASUME law provided for the withholding of the amount due from his fees. **Plaintiff's Exhibit XVI** (Docket 51). Regarding to the defendants' proffered

**CIVIL NO. 03-1097 (SEC)**                6

reason not to renew his contract because of the complaints filed against him, Rodriguez states that the defendant Lastra admitted that such a determination did not correspond to her, but to the Director of the SIF's Legal Office, on the basis of judgments where malpractice liability had actually been imposed on the SIF, not on the basis of mere complaints, as suggested by Lastra. **Plaintiff's Exhibit II(a)**, p. 69 and 75-78 (Docket 51). Further, Rodriguez notes that defendant Lastra acknowledged in her deposition that the contracts and employment of other physicians who had also been sued were not terminated. **Plaintiff's Exhibit II(c)**, p. 35-36 (Docket 51). Rodriguez also notes that, on February 11, 2002, the SIF's Sub-administrator, Sara Tolossa, sent a note to defendant Lastra stating concerns for Lastra's termination letter to Rodriguez, and instructing Lastra to take uniform measures and follow procedures for the non-renewal of professional services in the future. **Plaintiff's Exhibit XXII** (Docket 51).

As a result of the proceeding, the Court concludes that Rodriguez has set forth sufficient evidence to rebut the defendant's proffered reasons at this stage of the proceeding. Consequently, the Court **RECOMMENDS** that defendant's summary judgment motion be **DENIED** as to Rodriguez's First Amendment claim.

B. Hostile Work Environment

In viewing a hostile work environment claim, the Court must consider factors such as the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Evidence of remarks, innuendos, ridicule and intimidation may be sufficient to support a hostile work environment claim. O'Rourke v. City of Providence, 235 F. 3d 713, 729 (1st Cir. 2001). Moreover, the accumulated effect of incidents of humiliating, offensive comments, taken together, can also constitute a hostile work environment. Id.

Defendants allege that Rodriguez was not subjected to unwelcome harassment and that he cannot prove that the alleged harassment was based on his political affiliation and that the alleged

**CIVIL NO. 03-1097 (SEC)**                              7

harassment affected a term, condition, or privilege of employment. (Docket 34, p. 11). In response, Rodriguez has failed to offer evidence to support his claim of hostile work environment. (Docket 50). Thus, the Court **RECOMMENDS** defendants' summary judgment motion on this ground be **GRANTED**.

C. Due Process Claims

The Due Process Clause of the Fourteenth Amendment guarantees a pre-termination hearing to public employees who have a constitutionally cognizable property interest in their employment. Bd. Of Regents of State Colls. V. Roth, 408 U.S. 564, 566 (1972). In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that he has a legally recognized exception that he will retain his position. Santana v. Calderón, 342 F.3d 18, 24 ( 1st Cir. 2003). A legitimate expectation of continued employment may derive from a statute or an officially sanctioned rule of the workplace. Id.

Defendants now move for summary judgment as to Rodriguez's due process claim alleging that he does not have a protected interest or a property right because he was an independent contractor, not an employee of the SIF. Defendants allege that Rodriguez did not receive a salary and that he instead billed the SIF for his services. Defendants also allege that Rodriguez, as the terms of his contract clearly stated, had a private office at the same time he worked for the SIF. They further contend that Rodriguez did not have any of the benefits of a regular employee of the SIF such as vacation and sick leave. Thus, they allege, Rodriguez did not have a valid expectation to continue his job. (Docket 34, p.16).

Rodriguez counters by alleging that after working for seven months under the same conditions as he had worked for during the prior ten and a half years, and producing all the documentation pertaining to the renewal of his contract that had been requested to him, he reasonably considered that his professional services contract for the period from 2001-2003 had been renewed. (Docket 50, p. 20). Rodriguez also alleges that defendant Lopez admitted that the termination of his contract was done in violation of the Procedure for the Contracting of Service with

**CIVIL NO. 03-1097 (SEC)**                    8

Health Professionals because the Contracting Office never recommended the rescission of such contract nor prepared a letter of rescission for Lopez's signature, and Lopez never sent a letter of rescission with his signature to Rodriguez, setting forth the reasons for such action. **Plaintiff's Exhibit IV(b)**, p. 15 and 25-26 (Docket 51).  Indeed, on February 11, 2002, the SIF's Sub-administrator, Sara Tolossa, sent a note to defendant Lastra stating concerns for Lastra's termination letter to Rodriguez and instructing Lastra to take uniform measures and follow procedures for the non-renewal of professional services in the future. **Plaintiff's Exhibit XXII** (Docket 51).

     It has been well settled that, except for policy making/confidential positions, all government employees are protected from discharge from their positions on the basis of their political affiliation. Protections generally afforded to public employees against being discharged for refusing to support political party or its candidates, or for otherwise exercising First Amendment rights, also extend to independent contractors. O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 721(1996).

     Having found that Rodriguez has established a prima facie case of political discrimination for summary judgment purposes, the Court **RECOMMENDS** that defendants' summary judgment motion as to plaintiff's Due Process Clause be **DENIED**.

D. Qualified Immunity

     The doctrine of qualified immunity protects government officials who perform discretionary functions from liability for monetary damages under 42 U.S.C. § 1983.  Generally, qualified immunity shields government officials "from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known at the time of the conduct at issue." Mitchell v. Forsyth, 47 U.S. 511, 524 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Acevedo-Garcia v. Vera-Monroig, 20 F.3d 1, 10 (1st Cir. 2000) (explaining right must be well established and official understood his actions would violate that right).

     When confronted with a claim of qualified immunity, the Court must first consider whether the allegations of the complaint make out a valid constitutional claim. Wilson v. Layne, 526 U.S.

**CIVIL NO. 03-1097 (SEC)**                              9

606, 605 (1999). If the Court finds that the complaint raises such a claim, the Court must then determine as a matter of law, whether at the time of the alleged violation, the constitutional right was clearly established. St. Hilaire v. Laconia, 71 F.3d 20 (1st Cir. 1995). Making said determination "must be undertaken in light of the specific context of the case, not as a broad proposition." Saucier v. Katz, 533 U.S. 194, 199 (2001).

In this case, Rodriguez has alleged facts that if true, amount to First and Fourteenth Amendment claims. Because issues of fact exist regarding possible discriminatory animus, the Court is precluded from considering the qualified immunity defense at this time. See Padilla Garcia v. Rodriguez, 212 F. 3d 69, 74 (1st Cir. 2000). Consequently, the Court **RECOMMENDS** that defendants' summary judgment motion on this ground be **DENIED**.

**IV. Conclusion**

**WHEREFORE**, the Court hereby **RECOMMENDS** that SIF's motion for summary judgment (Docket No.32 ) be **GRANTED** in part and **DENIED** in part. The Court **RECOMMENDS** that plaintiff's hostile work environment cause of action be **DISMISSED**.

Under the provisions of 28 U.S.C. sec. 636 and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objections is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F. 2d 22, 30-31 (1ST Cir. 1992).

**SO RECOMMENDED.**

In San Juan, Puerto Rico this 22nd day of July, 2005.

**CIVIL NO. 03-1097 (SEC)** 10

          **S/ Gustavo A. Gelpí**
          **GUSTAVO A. GELPI**
          **U.S. Magistrate Judge**